GEORGIA,
Chatham Co.
AUG. 1808.

Ex parte
Carnochan.

*Minutes of Superior Court, letter G. p. 10.*

*Chambers, August* 22, 1808.

### *Ex parte* JOHN CARNOCHAN.

### MANDAMUS.

*Charlton*, Judge.

THIS is a rule to show cause why a *mandamus* should not issue, directed to the clerk of the court of ordinary of Glynn county, requiring him to issue a citation in favour of *John Carnochan*, who had applied for letters of administration, on the estate of *Thomas B. M'Kinnon.*

In support of this rule, *John Carnochan* suggests in the petition the following facts :

" That *Thomas B. M'Kinnon*, late of the county of Glynn, departed this life, possessed of, and entitled unto, a considerable estate real and personal, without having made or executed any last will or testament: That the petitioner being a creditor of the deceased, and being also authorized by almost all the other creditors, as well as by the brother and nearest of kin the said deceased, applied to the honourable the court of ordinary for the said county of Glynn, through their proper officer, the clerk of said court, *John Saunders*, Esq. for a citation in the usual form calling upon all and singular the creditors and kindred of the said deceased, to show cause, at a certain day therein to be expressed, why administration should not be granted to the petitioner, in due form of law.  But that the said *John Saunders* refused to do so, notwithstanding the right which the petitioner, in common with his fellow citizens, had in all cases regarding intestate estates on which no administration had been granted, to. demand and receive such citation."

Mr. *Noel* in showing cause, stated the grounds of objection

to the regularity of the rule ; 1. That the Superior Court did not possess the power of granting rules, or of exercising a jurisdiction over cases beyond the limits of a particular county in which they originated ; and, 2. That this rule should have been directed to the *justices* of the court of ordinary, instead of their clerk.

GEORGIA,
Chatham Co.
Aug. 1808.

Ex parte
Carnochan.

It will be necessary for me to enter into a consideration of these objections before the subordinate points are disposed of.

First Objection.   In answering this objection, we are necessarily compelled to advert to the principles of the constitution, which define and limit the power and jurisdiction of the Superior Courts.   The first section of the 3d art. of the constitution declares, that the judicial powers of the state, shall be vested in a Superior Court, and in such inferior jurisdictions as the legislature may establish : That the Superior Courts shall have final and exclusive jurisdiction in all criminal cases, which shall be tried where the crime was committed ; and in all cases respecting titles to land, which shall be tried in the county where the land lies : That they shall have power to correct errors in inferior judicatories, by writs of *certiorari*, and that the judges of the Superior Courts (sec. 7. art. 4.) shall have power to issue writs of *mandamus*, prohibition, *scire facias*, and all other writs which may be necessary for carrying their powers fully into effect.

Now it results from these sections of the constitution, that the powers of the Superior Courts, as they relate to local jurisdiction, are confined to the trial of criminal cases, and to cases respecting titles of land.

In all other respects the powers of the Superior Courts are co-extensive with the districts in which they are held. In them is placed that superintending authority which is analogous to the court of King's Bench ; an authority which cannot be impeded by the geographical limits of counties.

In granting, therefore, writs of *mandamus, certiorari*, or prohibition, there is an ubiquity attached to the person of the judge which confers a constitutional jurisdiction to his

28

GEORGIA,
Chatham Co.
Aug. 1808.

Ex parte
Carnochan.

fixed or temporary residence within the district. From that point his superintending authority may radiate in every direction where it may be necessary to carry into effect the powers of the Superior Court.

Second Objection. The 2 sect. of the act of 1799, directs, that all applications for letters of administration, shall be made to the clerk of the court of ordinary, who shall give notice thereof in one of the Gazettes of this state, and by advertisement at the court house of the county, thirty days before the sitting of the court of ordinary.

The counsel against the rule suppose, that this act is unconstitutional, because the 6 sect. of the 3 art. of the constitution declares, that one or more justices of the court of ordinary *with* their clerk, may issue citations, and grant temporary letters in time of vacation, to hold until the next meeting of the court.

If this act really contained any provision irreconcilable with the constitution, I should not hesitate in giving my opinion. The constitution, *res est sacra*, which I shall never, in this station, see outraged with impunity. Those who contend for the omnipotency of the legislature, in a denial of a judicial authority to declare its acts unconstitutional, knowing very little about the principles of a republican government.

But this act appears to me to be perfectly consistent with the 6th sect. of the 3 art. of the constitution. This section delegates to the legislature the power of directing the mode in which the authority of the court of ordinary is to be exercised. It does not imperatively direct, that one or more justices, with the clerk, shall issue citation, but that it *may* be done in that manner. The apportionment therefore of duties, between the court and their clerk, was left to the sound discretion of the legislature.

Giving this exposition to the constitution and the law, I am of the opinion, that the court of ordinary ought not to interfere with the applications for citations, which must be submitted to the clerk, and by him granted as a matter of right. The fiat of the court, as it has been observed by Mr. *Noel*,

GEORGIA,
Chatham Co.
Aug. 1808.

Ex parte
Carnochan.

is not at all necessary.   At this incipient stage of the application for administration, every thing is referred to the discretion of the clerk ; a discretion which can do no mischief, as the controlling power of the court of ordinary, in the hearing of caveats, will always correct the errors of the clerk.   A citation operates as a mere rule to show cause ; and it is very immaterial at whose instance it is granted. This rule therefore has been properly issued.

I have next to consider, whether a *mandamus* ought to issue in this case, and if it ought to issue, whether it should be a *mandamus* commanding obedience, or cause to be shown to the contrary, or a peremptory *mandamus*.

If the first *mandamus* issues, the party may make his return, on which an issue may be made, and tried at the next Superior Court of Glynn, in the manner pointed out by 9 Ann. c. 20.

The *peremptory mandamus* presupposes the insufficiency of a return, and commands an immediate and prompt obedience. It leaves the party no alternative.

It is usual to grant a rule to show cause why a *mandamus* should not issue ; but this form has given way to the pressing circumstances of a case, as we find in *Sayer's Rep.* 160. where *C. J. Ryder* is made to say, " if we grant a rule to show cause, while it is depending, the poor may starve."

*Sayre's Rep.* 160.

So in this case, if the disjunctive *mandamus* issues, which is nothing more than an accumulative rule to show cause, the estates of the deceased may starve, (if I may be permitted to apply the term,) or suffer incalculable injuries for the want of a legal representative.

The temporary letters to collect, offer no answer to the objection against this species of *mandamus*, for the powers of such temporary representation are confided to a simple collection of assets and effects ; nor can those powers exist longer than the next meeting of the court of ordinary ; they must be renewed, or they must constitutionally expire.

Only in cases of appeals from the determinations of the court of ordinary on caveats, can temporary letters

GEORGIA,
Chatham Co.
Aug. 1808.

Ex parte
Carnochan.

be granted, the operation of which can extend to a pe-
riod beyond the next " meeting of the court." But *these
letters*, though they are granted by the court, and not by the
clerk, (as in cases previous to an appeal) do not confer
greater powers than the letters granted by the clerk ; the
only difference is, that the temporary letters of the *clerk,*
can exist no longer than the meeting of the court of ordinary,
the temporary letters of the *court* of ordinary may exist, until
the Superior Court decides on the appeal.

Under these circumstances, I cannot consent to a postpone-
ment of the creation of a legal representative, until a deter-
mination takes place on the *return* to the *mandamus*, which
may be protracted (if the proceedings are made up according
to the statute of 9 Ann,) beyond the next term.

But I beg it to be understood, that this is not to operate as
a general precedent, but is entirely framed upon the basis of
this particular case, and will only be applicable to cases in-
volving similar circumstances.

The application of *John Carnochan* should not have been
rejected by the clerk of the court of ordinary of Glynn ; he
came before them clothed with the powers of the kindred,
and most of the creditors. The granting of the citation,
therefore, was a matter *ex debito justitiæ ;* even if he had
stood upon the footing of a creditor, and there was then be-
fore the *clerk* no superior claimant.

If the citation which has been issued by the clerk of the
Superior and Inferior Courts of Glynn, pursuant to the pow-
ers vested in him, by the 5th section of the act of 1789,
(Crawf. and Marb. Dig. 218,) had been issued upon the
voluntary application of *John Saunders*, the clerk of the court
of ordinary, and contained the usual requisites of a citation,
I should not hesitate in discharging the rule, because the
object for the motion of the *mandamus* would then be accom-
plished.

The party might caveat or appeal ; but this citation is is-
sued under the *order* of the court of ordinary, and they *com-
pel* their officer to assume the responsibility of an administra-

tor. This citation, therefore, is irregular in all its features·
Let a peremptory mandamus issue.

GEORGIA,
Chatham Co.
Aug. 1808.

Ex parte
Carnochan.

It being suggested by Mr. *Saunders*, that *Davis* and *Berrie*
had filed a *caveat* against the citation issued on his applica-
tion :

### By the Court.

Mr. *Saunders* states, that *Davis* and *Berrien* have trans-
mitted to the office of the clerk of the Superior and Inferior
Courts, or addressed a letter or writing to that officer which
has been considered a caveat.

If this paper should have that operation, it will *there* be
considered whether it does not supersede the application for
the rule, as well as the *mandamus*, which has been directed
to issue.

This paper is not before the court, and consequently no
opinion can be formed as to its operation upon the citation,
issued upon the application of the clerk, under the order of
the court of ordinary.

> *Davis* and *Berrien*, in support of the rule.
> *Noel*, against it.